UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC SCHMITT,

     Plaintiff,

v.

                         CASE No. 8:09-CV-2156-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____

O R D E R

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

I.

The plaintiff, who was thirty-six years old at the time his insured status expired and who has completed some college courses, has worked as an assistant store manager and truck driver (Tr. 112, 119). He filed a claim

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

for Social Security disability benefits, alleging that he became disabled due to a laminectomy syndrome, a disc bulge, and back pain (Tr. 111).[2] The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a <u>de novo</u> hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "disorders of the spine, status-post laminectomy/dis[c]ectomy at L4-5 (December 1999) and subsequent repair of two cerebrospinal fluid leaks (December 1999, January 2000)[] [and] history of knee surgery" (Tr. 12). He concluded that these impairments restricted the plaintiff to light or sedentary work "with a need for a sit/stand option and a need to avoid: ladders; unprotected heights; operation of heavy moving machinery; unusual stress; more than occasional bending, crouching, stooping, kneeling, squatting and crawling; [and] operation of foot controls" (Tr. 13). The law judge determined that these restrictions prevented the plaintiff from performing past work (Tr. 17). However, based upon the

---

[2]The plaintiff states in his memorandum that he filed a claim for supplemental security income (Doc. 20, pp. 1, 2, 3). This is incorrect: he filed a claim for disability insurance benefits (Tr. 86). This is significant because it means that the plaintiff must establish that he was disabled by December 31, 2002, the date he was last insured for disability benefits. Such a showing would not be required for a claim for supplemental security income.

testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, such as ticket seller, surveillance system monitor, and warehouse checker (Tr. 18-19). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 19). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

A. In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, the plaintiff must show that he became disabled before his insured status expired on December 31, 2002

(Tr. 12).  42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.  42 U.S.C. 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims.  See 20 C.F.R. 404.1520, 416.920.  One of the threshold inquiries (step two) is whether a claimant has a severe impairment.  20 C.F.R. 404.1520(c).  An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities.  20 C.F.R. 404.1521(a).  If an impairment is not severe, then a claimant is deemed to be not disabled.  20 C.F.R. 404.1520(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to

whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g). In such cases, the regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2.

### III.

On December 3, 1997, the plaintiff injured his lower back while loading freight onto a truck (Tr. 27). He underwent two surgeries in 1999, one to repair the damage to his lower back, and a second to repair a cerebrospinal fluid leak, which was detected after the plaintiff complained of severe headaches (Tr. 303-04). When headaches persisted, he underwent a lumbar drain by a neurosurgeon in January 2000 (Tr. 334). The law judge found the plaintiff to have a severe combination of impairments stemming

-6-

from his back injury and subsequent surgeries, but determined that the plaintiff has the residual functional capacity to perform light or sedentary work with appropriate restrictions (Tr. 12, 13). The plaintiff challenges the law judge's decision on five grounds. None of the plaintiff's contentions warrants reversal.

The plaintiff contends first that the law judge erred by failing to find that the plaintiff's headaches constituted a severe impairment (Doc. 20, p. 6). This argument lacks merit since the law judge's assessment is reasonable. In all events, this contention does not support reversal because there is no evidence that the plaintiff has any functional limitation due to headaches.

The plaintiff, following his back surgery in December 1999, developed headaches. This was determined to be due to a cerebrospinal fluid leak. He underwent two procedures in late December 1999 and early January 2000 to treat the problem. By March 3, 2000, Dr. Craig R. Bennett, the plaintiff's treating orthopedic surgeon, reported that the headaches "are basically gone," although the plaintiff does have some headaches due to seasonal allergies (Tr. 562). On May 19, 2000, Dr. Bennett stated that the

plaintiff "has no headaches" (Tr. 560). Similarly, the plaintiff in April 2000 told Dr. John Lozano, who conducted independent medical examinations in connection with the plaintiff's workers compensation, that he had no further headaches (Tr. 366).

However, on February 21, 2001, the plaintiff told Dr. Bennett he had some occasional headaches (Tr. 556). And in August and October 2001, the plaintiff complained of headaches at emergency room visits (Tr. 674, 698).[3]

There is no further complaint of headaches until September 3, 2002. when the plaintiff went to Dr. Daniel H. Bender, a pain management specialist (Tr. 528). On that occasion, the plaintiff said that the procedures did not resolve his chronic dural leak, and he has associated headaches (id.). However. the plaintiff treated with Dr. Bender for years thereafter, and there are no reported complaints of headaches. In fact, Dr. Bender's notes consistently indicate that the plaintiff is negative for headaches (see, e.g., Tr. 410. 433, 489).

---

[3]The plaintiff told Dr. Lozano in August 2001 that he was having recurrent headaches (Tr. 355). The law judge incorrectly said that. during this visit. the plaintiff did not mention problems with headaches (Tr. 14). This inaccuracy clearly does not rise to the level of reversible error.

The law judge concluded that "the record fails to reflect that headaches persisted for any consecutive twelve month period" (Tr. 14). This conclusion is supported by substantial evidence. The law judge could reasonably determine that the headaches that were caused by the cerebrospinal fluid leaks were resolved by April 2000. The plaintiff's contrary assertion in September 2002 to Dr. Bender is not supported by any medical evidence. After the headaches caused by cerebrospinal fluid leaks were successfully treated, the plaintiff only reported headaches on an occasional basis. Many months would pass between complaints of headaches. Accordingly, the law judge could reasonably conclude that the plaintiff's headaches were not a severe impairment because they did not persist for any consecutive twelve-month period.

In addition, as the Commissioner correctly points out, the plaintiff cannot prevail on this issue simply by showing that the law judge should have characterized his headaches as a severe impairment. The Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). Because the law judge

found that the plaintiff has severe impairments, he did not stop prematurely at step two, but proceeded on to the next step in the sequential analysis. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987).

In order to demonstrate reversible error based upon a mischaracterization regarding headaches, the plaintiff must show that he had functional limitations from that condition that were not included in the law judge's determination of the plaintiff's residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005)(unpub. dec.) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). Consequently, it is the functional limitations from an impairment, and not the diagnosis of an impairment, that is determinative in an evaluation of disability. See McCruter v. Bowen, supra, 791 F.2d at 1547.

There is no opinion from any medical source, whether treating, examining or reviewing, that sets forth any functional limitations due to

-10-

headaches. Significantly, Dr. Bender has set forth functional limitations that are very favorable to the plaintiff, but he does not predicate those limitations on headaches, even in combination with other impairments (Tr. 572-73).

The absence of any functional limitations from headaches further supports the law judge's finding that the plaintiff's headaches are a nonsevere impairment. The regulations define a nonsevere impairment as one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. 404.1521(a), 416.921(a). The plaintiff points out that the court of appeals has stated that "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Notably, the law judge acknowledged this principle in his decision (Tr. 11). Regardless of the alternate formulation, the standard set out in the regulations, and the one I will apply, is that a nonsevere impairment does not significantly limit a claimant's ability to do work activities. See Dixon v. Barnhart, 151 Fed. Appx. 810, 812 (11th Cir. 2005)(unpub. dec.) (the claimant

"did not have a severe impairment because he was not significantly limited by a physical or mental impairment"). Since there is no evidence from a medical source that headaches would impose a functional limitation, that impairment would not have more than a minimal effect upon the plaintiff's ability to work, and is therefore nonsevere.

Furthermore, in the absence of functional limitations from headaches, the law judge could not have committed reversible error. Thus, the law judge did not stop at step two of the sequential analysis, but went on to determine the plaintiff's residual functional capacity. Since there are no functional limitations due to headaches, the plaintiff's residual functional capacity would not change regardless of whether the law judge called that impairment severe or nonsevere.

The plaintiff makes an additional argument concerning his complaints of headaches. The plaintiff argues that the law judge failed to develop the record fully and fairly with regard to the plaintiff's headaches. Specifically, the plaintiff contends that the law judge refused to allow the plaintiff to testify at the hearing about that impairment.

The law judge "has a basic obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422 (11ᵗʰ Cir. 1997). In order for a case to be remanded, however, "there must be a showing of prejudice before it is found that the [plaintiff's] right to due process has been violated...." Id. at 1423. Thus, for a remand, the record must contain evidentiary gaps that cause unfairness or clear prejudice. Id.

In the first place, it is simply inaccurate to say that "Plaintiff's counsel was never permitted to elicit his own testimony from his client" (Doc. 20, p. 21). As the Commissioner correctly observes, there is no indication in the transcript of the administrative hearing that the law judge ever refused a request by the plaintiff or his attorney to submit testimony regarding the plaintiff's headaches. Indeed, the transcript shows that no such request was ever made.

As the plaintiff acknowledges, the law judge asked questions of the plaintiff, then the plaintiff's attorney asked him questions, that was followed by a discussion concerning res judicata due to a prior unsuccessful claim filed by the plaintiff, then the law judge asked questions of the vocational expert, after which the plaintiff's attorney asked questions of the

expert.   At that point, the plaintiff's attorney stated: "I have no more questions" (Tr. 41). Thus, the plaintiff's contention that the law judge "refus[ed] to allow questioning by Plaintiff's attorney on the important issue of the headaches suffered by Plaintiff" is a misstatement of what took place. From all that appears, the plaintiff's attorney simply overlooked asking the plaintiff about headaches. There is no basis for blaming the law judge for that oversight.

In all events, the plaintiff was not prejudiced by the oversight. At the hearing, the plaintiff's attorney represented that the plaintiff's headaches were "persistent" and "incapacitating," and the law judge acknowledged in his decision that the attorney had "indicated that the claimant has been unable to work due to headaches" (Tr. 13). Furthermore, as previously explained, the law judge appropriately evaluated the plaintiff's complaints of headaches. Consequently, the plaintiff was not prejudiced by his attorney's failure to question him about his headaches.

The plaintiff contends further that the law judge failed to give appropriate weight to a residual functional capacity report completed by Dr. Bender. This argument is unpersuasive.

-14-

After seeing the plaintiff for the first time on September 3, 2002, Dr. Bender concluded that the plaintiff suffered from "[c]hronic low back pain ... with residual right L5 neuropathic pain" (Tr. 530). At that time, his plan was to initiate drug therapy and follow up with the plaintiff in two weeks (id.). The subsequent notes leading up to the plaintiff's date last insured of December 31, 2002, reflect Dr. Bender's various attempts to respond to the plaintiff's pain symptoms (Tr. 522-27). These attempts included variable dosing of prescribed medications (Tr. 522, 523, 526, 527), a right and left sacroiliac block (Tr. 525), and evaluation for further surgical intervention (Tr. 522-24). Notably, the treatment notes contain no mention of the impact of the plaintiff's pain on his ability to work.

In his residual functional capacity questionnaire, completed on January 22, 2009, and apparently covering the period from September 2002 to January 2009 (see Tr. 572), Dr. Bender noted that the plaintiff frequently experienced symptoms severe enough to interfere with attention and concentration and suffered marked limitations in his ability to deal with work stress (Tr. 575). Dr. Bender further noted that the plaintiff could not walk a city block without rest, could only sit or stand for ten minutes, and could sit

or stand/walk for less than two hours in an eight-hour day (Tr. 576). Dr. Bender also indicated that the plaintiff would have to take frequent unscheduled breaks of, on average, fifteen minutes, during an eight-hour workday and could only occasionally lift less than ten pounds (Tr. 577). Finally, Dr. Bender estimated that the plaintiff would be absent from work about three times per month as a result of his impairments (Tr. 579).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not affording them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge made the following finding with respect to Dr. Bender's evaluation (Tr. 17):

> In deciding the claimant's residual functional capacity, the Administrative Law Judge did not attach any significant weight to the January 22, 2009 Residual Functional Capacity Questionnaire completed by Dr. Bender, as it is neither corroborated by the claimant's treatment records,

nor supported by rationale explaining the basis for the identified limitations (Exhibit 18F).   Dr. Bender's opinion is inconsistent with the opinions of Drs. [Douglas] Barkin and Bennett, who are both Board Certified Orthopedic Surgeons, and Dr. Bender offered no rationale as to why he believed that the claimant was more restricted through December 31, 2002.  The regulations provide that "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist" (20 CFR §404.1527(d)(5)). Moreover, Dr. Bender's treatment notes fail to reflect that he evaluated the claimant's ability to perform work-related activities at any time through December 31, 2002.   Rather, Dr. Bender's treatment notes reflect that he was responding to the claimant's subjective allegations of pain. Hence, the Administrative Law Judge attached greater weight to the opinion of Dr. Bennett as the claimant's treating surgeon as he specifically evaluated the claimant's ability to work.

These reasons support the law judge's determination to discount Dr. Bender's opinion.  In other words, the law judge has shown good cause for not giving that opinion considerable or substantial weight.

The law judge's decision to accord greater weight to the opinion of Dr. Bennett was amply supported.  As the law judge pointed out, he is not only a treating physician, but also a specialist in orthopedic surgery. Therefore, under 20 C.F.R. 404.1527(d)(5), the law judge was entitled to give

more weight to his opinion. Furthermore, as the law judge pointed out, Dr. Bennett specifically opined on the plaintiff's ability to work. Thus, in July 2001, Dr. Bennett concluded that the plaintiff had a permanent partial disability of 11%, and indicated that the plaintiff could work, albeit with work restrictions of lifting no more than approximately ten pounds and "no sitting or standing more than two hours at a time for each activity" (Tr. 554). On February 1, 2002, he reiterated his impairment rating of 11% (Tr. 552).

In contrast, the law judge determined that Dr. Bender's treatment notes up to the plaintiff's date last insured contain no assessment of functional limitations (Tr. 17). The law judge's determination is corroborated by the opinion of a reviewing physician that the plaintiff was capable of light work as of the date last insured (Tr. 532). The law judge also considered that the form that Dr. Bender filled out was not supported by a "rationale explaining the basis for the identified limitations" (Tr. 17). This is particularly noteworthy since the form was not filled out until January 27, 2009, which was more than six years after the date the plaintiff was last insured (Tr. 579). These reasons provide an adequate justification for the law

judge to give greater weight to the opinion of Dr. Bennett, the plaintiff's treating orthopedic surgeon, than to Dr. Bender's opinion.

The plaintiff next contends that the law judge misapplied the Eleventh Circuit's pain standard, and, therefore, did not appropriately assess the plaintiff's subjective complaints of pain. This argument also lacks merit.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable

-19-

basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge summarized fairly the plaintiff's testimony regarding the severity of his pain and other symptoms (Tr. 13-14). After considering the plaintiff's testimony, the law judge, in keeping with the Eleventh Circuit pain standard, found that, although the plaintiff's impairments could reasonably be expected to produce the symptoms he alleged, the plaintiff's testimony regarding the intensity, persistence, and limiting effects of those symptoms was not credible to the extent they were inconsistent with the finding of the plaintiff's residual functional capacity (Tr. 14). In this regard, the law judge explained (id.):

> In terms of the claimant's alleged reasons for not working and his alleged medication side effects, the Administrative Law Judge finds that they are not entirely corroborated by his treatment records. While he complained of pain through his date last insured, he never advised any treating source that he had been unable to work due to pain, or that pain had been causing problems with sleeping or driving. Likewise, although the claimant alleged headaches after his discectomy, the record fails to reflect that headaches persisted for any consecutive twelve month period.

-20-

The law judge then extensively reviewed the records of physicians who

treated the plaintiff between his alleged onset date and the date on which he

was last insured (Tr. 14-16). The law judge concluded (Tr. 16-17):

> Hence, for the reasons noted above, the
> Administrative Law Judge has not fully credited
> the claimant's allegations. If the claimant had been
> experiencing disabling headaches and sleeping
> problems, and was unable to drive, then the
> Administrative Law Judge would expect to see
> documentation establishing that he had advised
> treating sources that these were precluding him
> from working. Furthermore, the Administrative
> Law Judge would expect to [see] observations of
> significant clinical abnormalities. The claimant's
> alleged medication side effects through December
> 31, 2002 are not credible as they are not
> corroborated by reports to treating sources. As
> noted above, the claimant complained of
> medication side effects on one occasion, with no
> further complaints after a change in his Methadone
> dose.
>
> Hence, although the claimant's spine impairment
> and history of knee surgery could reasonably be
> expected to cause some pain, the mere existence of
> pain, even chronically, does not require a finding
> that an individual cannot work and the fact that
> working may cause pain and discomfort does not
> mandate a finding of disability. While the
> claimant's complaints of pain have some basis in
> objective findings, the clinical findings fail to
> establish that the level of pain he was experiencing
> would have precluded him from all work through

-21-

> December 31, 2002. The Administrative Law
> Judge has partially credited the claimant's
> testimony by restricting him to sedentary and light
> level work with a sit-stand option, and by
> precluding him from work with unusual stress and
> operation of foot controls.

The law judge's explanation for his credibility determination is adequate and reasonable. The plaintiff clearly has not demonstrated that the evidence compels a contrary conclusion. <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>, 386 F.3d at 1027. The plaintiff mainly points to Dr. Bender's opinion to support his contention on this issue (<u>see</u> Doc. 20, p. 18). However, as previously discussed, the law judge reasonably discounted Dr. Bender's opinion. Consequently, the plaintiff's challenge to the law judge's credibility determination fails.

As his final contention, the plaintiff argues that the law judge erred by failing to pose a complete hypothetical question to the vocational expert. In this regard, he maintains that the law judge should have included the limitations stated in Dr. Bender's residual functional capacity report, as well as limitations due to headaches. This argument is meritless.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which

-22-

comprises all of the claimant's impairments." <u>Wilson</u> v. <u>Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002). On the other hand, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. <u>Crawford</u> v. <u>Commissioner of Social Security</u>, 363 F.3d 1155, 1161 (11th Cir. 2004).

The residual functional capacity found by the law judge clearly matches the pertinent hypothetical question posed to the vocational expert (Tr. 13, 38-39). Furthermore, as previously discussed, the law judge properly discounted Dr. Bender's residual functional capacity assessment, and reasonably concluded that the medical evidence did not demonstrate that the plaintiff's headaches had any impact on his ability to work. Therefore, the law judge did not need to include these limitations in his hypothetical question to the vocational expert.

IV.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this

Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this /7th day of

December, 2010.

_Thomas G. Wilson_

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE